# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Vernard Jerome Mathis, #297034, | ) | C/A No.: 1:11-2383-RMG-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Leroy Cartledge, Warden of | ) | |
| McCormick Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Vernard Jerome Mathis is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections who, through counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #18, #19]. Petitioner requested, and the court granted, two extensions to file a response to the motion for summary judgment. [Entry #23, #24, #26 and #27]. Petitioner timely filed his response on March 19, 2012 [Entry #28], and Respondent filed a reply on March 29, 2012 [Entry #29].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Factual Background

The facts giving rise to the charges involved a plan to abduct from his home Melvin Steele, the manager of the video poker operation McDonald Amusement Company, and force him to give up the combination to the door and safe so the robbers could obtain the proceeds.   Three men entered Melvin and Rita Steele's home at 9:30pm, handcuffed and duct-taped them, and took them to a waiting van.   Ultimately, Melvin was shot by one of the robbers who allegedly became frustrated with the combinations that Melvin was giving on the way to the Amusement Company.   Melvin was left handcuffed and mummy taped in the woods.   He bled to death and his body was found in a field behind the Southern Tool & Die building.

At trial, almost 100 pieces of tangible evidence were submitted and more than 50 witnesses testified, including Petitioner's co-defendant, Elton Wiggins. Wiggins admitted his involvement in the crime, and in exchange for his testimony, he was not charged with murder. Wiggins testified that after he rang the doorbell at the Steele residence and Rita opened the door, Petitioner and another accomplice named Bill rushed in and took down Rita and Melvin and handcuffed them and bound them with duct tape.   Wiggins testified that they took Melvin and Rita away from their home in a van that Wiggins drove. Wiggins testified that Petitioner shot Melvin in the leg after becoming frustrated with him in trying to obtain the combination to the alarm and safe on route to the Amusement Company.   Wiggins testified that he communicated with Petitioner using walkie-talkies

that Petitioner had given him, and which evidence revealed Petitioner had purchased. Wiggins also testified that Petitioner had a 9mm gun with a laser scope.

Multiple witnesses identified Petitioner, although from the Washington, D.C. area, as having been in the Lancaster, South Carolina area in the weeks preceding the murder, having purchased or been connected to five vehicles, three of which he paid for in cash and using a fictitious name, and one of which was a silver and gray van used to kidnap the couple and in which Melvin's blood was found, along with a bullet consistent with the bullet that went through his legs. Evidence showed that Petitioner had rented a moving truck that was seen across the highway from Southern Tool & Die. Near the moving truck were found a duffle bag, a bullet-proof vest, a 9mm pistol with a laser sight and ammunition. A search of Petitioner's car incident to his arrest revealed walkie-talkie boxes and duct tape. Other evidence included records of Petitioner's cellphone calls and of his having rented motel rooms in Lancaster, as well as confirmation of his identity and his car when questioned by a police officer prior to the robbery. Rita also testified at trial about the events after she opened the door, including the kidnapping and van transport, and she identified Petitioner from a photo lineup before he was arrested. She testified that she saw Petitioner's eyes after she was knocked to the ground and before being taped up.

II.     Procedural Background

Petitioner was indicted by the Lancaster County grand jury during the December 2000 term of court for murder [Entry #18-4 at 77-78]; during the February 2001 term of court for armed robbery [Entry #18-4 at 75-76]; and during the June 2003 term of court for

one count of first degree burglary [Entry #18-4 at 69-70] and two counts of kidnapping [Entry #18-4 at 71-74]. He was represented by John D. Clark, Esq. at a jury trial on June 2-6, 2003 before the Honorable Paul E. Short, Jr. [Entry #18-1 at 6]. The jury found Petitioner guilty as charged and Judge Short sentenced Petitioner to life without parole ("LWOP") on each charge. [Entry #18-4 at 63-64].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). [Entry #18-5]. On appeal, Petitioner was represented by Robert M. Dudek of the South Carolina Commission on Appellate Defense who filed an *Anders*[1] brief on February 1, 2005 raising the following issue: "Whether the court erred by sentencing appellant to life imprisonment without parole upon a finding that appellant's prior Maryland burglary conviction, that he received before Maryland classified degrees of burglary, was the equivalent of a burglary in the first degree conviction in this state, and therefore a prior 'most serious offense' under S.C. Code Ann. § 17-25-45?" [Entry #18-6 at 4]. Attorney Dudek certified to the court that the appeal was without merit and asked to be relieved as counsel. [Entry #18-6 at 12]. Petitioner filed a *pro se* response to the *Anders* brief, raising the following issues:

---

[1] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

1) Did the trial court lack subject matter jurisdiction to enter a conviction or impose a sentence upon a flawed indictment?

2) Did the State violate the Appellant's rights to procedural due process of law pursuant to the Fourteenth Amendment?

3) Did the trial court lack subject matter jurisdiction upon indictments 2000-GS-29-1418 and 2001-GS-29-250 due to the prosecutor's Rule 3(c) violation?

4) Was the Appellant's Sixth Amendment Right to a fair trial violated by the in-court identifications in this case?

[Entry #18-8 at 6].

On June 13, 2005, the Court of Appeals filed an unpublished decision dismissing the appeal and granting counsel's petition to be relieved. [Entry #18-10]. Petitioner submitted a *pro se* petition for rehearing [Entry #18-12], which the Court of Appeals returned as untimely on June 29, 2005. [Entry #18-11]. The remittitur was issued on June 29, 2005 [Entry #18-13], but after receiving a letter from Petitioner [Entry #18-14], the Court of Appeals recalled the remittitur to address the petition for rehearing. [Entry #18-17].

On September 20, 2005, the Court of Appeals filed an order denying the petition for rehearing, stating that after careful consideration, it was unable to discover any material fact or principle of law that had been overlooked or disregarded, and hence, there was no basis for granting a rehearing. [Entry #18-4 at 93-95].

Petitioner filed a *pro se* petition for writ of certiorari on October 17, 2005, seeking review of the Court of Appeals' denial of relief upon his claim regarding the admission of

the identification testimony. [Entry #18-19 at 1]. The South Carolina Supreme Court denied certiorari by letter dated November 2, 2006. [Entry #18-4 at 97-98]. The remittitur was issued on November 6, 2006. [Entry #18-4 at 99].

Petitioner filed an application for post-conviction relief ("PCR") on March 8, 2007, as amended August 20, 2008, in which he alleged ineffective assistance of trial counsel and due process and constitutional violations. [Entry #18-4 at 100-134, 139-140]. A PCR evidentiary hearing was held before the Honorable Kenneth G. Goode on August 25, 2008, at which Petitioner and his counsel, Tricia A. Blanchette, Esq. appeared. [Entry #18-4 at 141-213]. On October 27, 2008, Judge Goode entered an order of dismissal. [Entry #18-4 at 240-249].

On November 5, 2008, Petitioner filed a Notice of Motion and Motion for Rehearing pursuant to Rule 59(a), SCRCP, and/or Motion to Alter or Amend pursuant to Rule 59(e), SCRCP. [Entry #18-4 at 250-253]. The motion was denied by order filed December 4, 2008. [Entry #18-4 at 256].

Petitioner appealed from the denial of PCR on December 30, 2008 and was represented by Attorney Blanchette, who filed a petition for writ of certiorari in the South Carolina Supreme Court on July 23, 2009. [Entry #18-24]. The petition raised the following issues:

1) Whether the lower court erred in finding that trial counsel did not render ineffective assistance of counsel when he failed to object on notice grounds to the imposition of a sentence to life without parole under S.C. Code Ann. § 17-25-45 (Supp. 2000).

2) Whether the lower court erred in determining that trial counsel did not render ineffective assistance of counsel when he failed to raise an argument under S.C. Code Ann. § 16-3-910 (1985).

3) Whether the lower court erred in finding that the testimony of Elton Wiggins was not credible and did not require a new trial.

[Entry #18-24 at 3].

The Supreme Court of South Carolina denied the petition on December 2, 2010. [Entry #18-27]. Petitioner filed a petition for rehearing on December 14, 2010 [Entry #18-28], which the court denied on January 7, 2011. [Entry #18-29]. The remittitur was likewise issued on January 7, 2011. [Entry #18-30].

Petitioner filed this federal petition for a writ of habeas corpus on September 6, 2011. [Entry #1].

III.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**    The Petitioner's right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated by trial counsel's failure to advise the Petitioner that he would be sentenced to mandatory life without parole if convicted of any charge at trial.

Supporting facts: The Petitioner was charged with five offenses that qualified as "most serious" charges pursuant to S.C. Code Ann. Section 17-25-45. The State served a life without parole notice on trial counsel but not on the Petitioner. Trial counsel did not advise the Petitioner that he must receive a life without parole sentence if

convicted of any of the charges. Pursuant to prevailing South Carolina standards, the Petitioner must have had actual notice of the mandatory life without parole sentence for such a sentence to be valid. Trial counsel failed to provide this actual notice.

**Ground Two:** The Petitioner's right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution was violated by the State's knowing presentation of false testimony by Elton Wiggins.

Supporting facts: At trial, Elton Wiggins testified that he and the Petitioner, among others, conspired to kidnap the victims. At the Post-Conviction Relief hearing, Elton Wiggins testified that he was forced by the State to testify that the Petitioner was involved with the conspiracy. This information was not provided to the defense prior to trial. The State's presentation of false testimony violated the Petitioner's due process rights.

**Ground Three:** The Petitioner's right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated by trial counsel's failure to attempt to interview Elton Wiggins prior to trial.

Supporting facts: At trial, Elton Wiggins testified that he and the Petitioner, among others, conspired to kidnap the victims. At the Post-Conviction Relief hearing, Elton Wiggins testified that he was forced by the State to testify that the Petitioner was involved with the conspiracy. Trial counsel made no effort to interview Elton Wiggins prior to trial. Had he done so, he would have been able to present this exculpatory information on the Petitioner's behalf at trial.

**Ground Four:** The Petitioner's right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated by trial counsel's failure to object to unconstitutional burden-shifting jury charges on malice.

Supporting facts: At trial, the trial court instructed the jury on at least two occasions that "if a person kills another in doing or attempting to do an act amounting to a felony, the killing is a murder." This jury charge is unconstitutional because it shifts the burden of proof from

the State to the Petitioner. See Lowry v. State 376 S.C. 499, 657
S.E.2d 760 (2008). Trial counsel did not object to this charge at any
point when it was given.

[Entry #1 at 5-11].

B.     Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary

judgment "against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).

In deciding whether there is a genuine issue of material fact, the evidence of the

non-moving party is to be believed and all justifiable inferences must be drawn in favor of

the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that

are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate.

Once the moving party makes this showing, however, the opposing party may not rest upon

mere allegations or denials, but rather must, by affidavits or other means permitted by the

Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ.

P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      C.      Habeas Corpus Standard of Review

            1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to

be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

>(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>>(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90;

*Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

b.	Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

> *Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a

"fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4. Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.* The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's

error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.    Analysis

1.    Procedurally-Barred Grounds

The parties agree that Petitioner's Ground Four is procedurally-barred to the extent that it was not raised in his direct appeal or PCR appeal.   Therefore, the undersigned does not address Ground Four.

Respondent further contends that Petitioner's Ground Two is procedurally-barred. In Ground Two, Petitioner alleges his due process rights were violated by the state's knowing presentation of false testimony by Wiggins. While Petitioner concedes that Ground Two was not raised in his direct appeal or PCR appeal, he argues that it is not procedurally-defaulted for three reasons: (1) because it was "tried by consent of the parties during the PCR hearing when counsel for the Respondent did not object to the admission of Wiggins' testimony on this issue"; (2) it was properly preserved by the Rule 59 motion that was filed after the PCR court's order was issued; and (3) that it cannot be presumed the issue was denied on an independent and adequate state ground because no state court applied such a bar. The undersigned finds that the procedural bar applies to Ground Two, as well.   [Entry #28 at 9-10].

As noted in Respondent's reply brief, Petitioner's PCR counsel never provided any notice of intent to seek relief upon a Fifth Amendment due process claim based upon Wiggins' alleged false trial testimony. PCR counsel made no mention of any due process claim during the PCR evidentiary hearing, nor sought relief upon such a claim in his proposed order. [Entry #18-4 at 221-238]. The state's failure to object to Wiggins'

testimony at the PCR evidentiary hearing cannot be interpreted as "trial by consent," especially where his testimony was relevant to Petitioner's ineffective assistance of counsel claim regarding trial counsel's investigation in preparation for Wiggins' testimony at trial. Because Petitioner's due process claim was not raised explicitly or implicitly in his PCR petition or even in his proposed order, it was therefore not presented to the PCR court for review at the time of his 59(e) motion. Petitioner's third argument against procedural default is similarly unavailing, as the rule he cites is inapplicable where, as here, he failed to exhaust his state remedies for this claim before presenting it to the South Carolina Supreme Court. *See Coleman*, 501 U.S. 722 at 735 n.1.

Therefore, to the extent that Grounds Two and Four were not raised in Petitioner's direct or PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

### 2. Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of these Grounds. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Grounds Two and Four. Petitioner had a trial in which he raised no objection, had the opportunity for a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve these issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the trial, the Solicitor presented the facts recited in the Factual Background section above, upon which the jury determined Petitioner guilty of the five charges against him. While Petitioner claims that the court should find that he is actually innocent in light of Wiggins' retraction of his trial testimony, the undersigned finds Petitioner has failed to meet his burden, and therefore, the procedural bars apply as to Grounds Two and Four.

### 3. Merits Review of Ground One

In Ground One, Petitioner argues that his constitutional right to the effective assistance of counsel was violated by trial counsel's failure to advise him that he would be sentenced to mandatory LWOP if convicted of any of the five offenses, which all qualified as "most serious" charges pursuant to S.C. Code Ann. § 17-25-45. Petitioner argues that the state did not serve an LWOP notice on him, although it did serve an LWOP notice on his trial counsel. Petitioner claims that trial counsel did not advise him that he was subjected to a mandatory LWOP sentence if convicted of any of the charges. Petitioner

claims that he should have had actual notice of the mandatory LWOP sentence for such a sentence to be valid.

Addressing Petitioner's allegations as to this claim, the PCR court found counsel was not ineffective for failing to relay the State's intent to pursue LWOP where counsel testified he relayed this information to Petitioner. [Entry #18 at 27-28]. At PCR, trial counsel stated repeatedly that he informed Petitioner of the LWOP information. [Entry #18-4 at 198 ("I'm sure I discussed it with him and I have talked with him about this even this day, I talked with him on the phone recently about it. I'm sure we discussed life without parole regarding a murder charge."), 206 ("for the murder I am confident that that was relayed and conveyed to him.")] and that Petitioner's knowledge he was facing LWOP factored into his decision to go to trial. Significantly, Petitioner did not accept a plea, "as any plea would have resulted in life without parole." [Entry #18-4 at 199]. Although counsel testified he could not recall whether or not he discussed the mandatory LWOP on the other charges, he could recall with certainty their discussions of it with respect to the murder charge. The PCR court found counsel's testimony was credible, but that Petitioner's testimony was not credible. That finding is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) ("But for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.").

Counsel having informed Petitioner that he was facing LWOP on at least the murder charge, combined with the lack of credible evidence that he did not inform Petitioner of LWOP on the other most serious offenses, Petitioner failed to show that counsel was

deficient. Further, Petitioner has failed to show prejudice, as he cannot demonstrate a reasonable probability that the result of trial would be different if counsel had made a notice objection. *See James v. State*, 641 S.E.2d 899, 902 (S.C. 2007)(upon any such objection, solicitor could simply have dismissed the indictment, re-indicted Respondent, provided Respondent with written notice, and proceeded to seek an LWOP sentence or else, upon hearing counsel's objection, to have postponed trial to allow the written notice).

Because Petitioner cannot show he was entitled to relief upon this claim of ineffective assistance of counsel, he cannot establish the denial of relief was the result of an unreasonable application of federal law. Thus, he is not entitled to federal habeas relief under 28 U.S.C. § 2254(d)(1) on Ground One.

4.      Merits Review of Ground Three

In Ground Three, Petitioner argues that his constitutional right to the effective assistance of counsel was violated by trial counsel's failure to attempt to interview Wiggins prior to trial. At trial, Wiggins testified that he and Petitioner, among others, conspired to kidnap the victims. At the PCR hearing, however, Wiggins testified that he was forced by the state to testify that Petitioner was involved with the conspiracy. Petitioner claims that trial counsel made no effort to interview Wiggins prior to trial and that if he had he done so, he would have been able to present this exculpatory information at trial.

Specifically, Petitioner argues in his response that Wiggins' PCR testimony warrants a new trial on one of two legal theories: (1) that the testimony meets the standard set forth by *Brady v. Maryland* and its progeny inasmuch as it completely exculpates him

and he was not informed that the false testimony would be presented; and (2) that the PCR court took as an absolute that defense counsel could not have interviewed Wiggins prior to trial, but that the testimony actually testified generally that he had "gotten the feeling" that Wiggins' attorney did not want him to talk to him instead of having obtained a more definite answer from Wiggins' counsel as to potential discussions with Wiggins prior to trial.   [Entry #28 at 17-18].

Petitioner claims that, aside from Wiggins' testimony, the evidence against him was not overwhelming.   Petitioner attempts to minimize Rita's testimony on the grounds that her identification of him was based on a "split-second" look and that she initially had identified Petitioner as having knocked on the door, and later testified that it was Wiggins. [Entry #28 at 18].

At the PCR hearing, trial counsel testified that he could not have interviewed Wiggins because Wiggins was represented by counsel, who would not allow for it. See SCACR 407, RPC Rule 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."). *See also Leon-Ramirez v. United States*, 2009 WL 3526559 (M.D.N.C. Oct. 23, 2009) (finding trial counsel investigation reasonable where counsel was unable to interview codefendant represented by counsel). The undersigned finds that any attempt by trial counsel to have interviewed Wiggins would likely have been futile. As Petitioner's codefendant, Wiggins was represented by his own

attorney, who would have had no apparent reason to allow any interview by Petitioner's counsel. Petitioner's trial counsel testified at PCR that the lawyers representing all the defendants had a conference call prior to the trial, but because the state believed that the strongest evidence was against Petitioner, that the other defendants "didn't really want to talk to me. What they in essence did was isolated me and [Petitioner] because most of the evidence that we knew about was pointing at [Petitioner]. And so what I'm trying to say is we all started out with a joint defense but that quickly fell apart." [Entry #18-4 at 195-196].

Petitioner also failed to establish that he was prejudiced by counsel not having interviewed Wiggins. Petitioner cannot establish that the result at trial would have been different but for counsel not interviewing Wiggins. First, Wiggins' testimony at the PCR hearing, identifying Frank Winston as the shooter, was deemed to completely lack credibility by the PCR court. This finding is entitled to deference under *Cagle*. Second, nothing in Wiggins' PCR testimony indicates that he would have testified any differently if counsel had interviewed him prior to trial. Wiggins' PCR testimony revealed that he had not wanted to reveal the name of the alleged real shooter because that individual was still on the street, and Wiggins' family was more important to him than anything else. [Entry #18-4 at 186]. Petitioner's claim appears to be that if trial counsel had interviewed Wiggins, he would have found solace in pinning the blame on the alleged real shooter who remained on the street. This claim is too conclusory to proceed.

In light of the PCR court's credibility findings and Wiggins' testimony, Petitioner did not establish in state court that he was prejudiced. As a result, Petitioner cannot show

that the PCR court unreasonably applied federal law in denying relief upon this claim.

Thus, Petitioner is not entitled to federal habeas relief under 28 U.S.C. § 2554(d)(1) on

Ground Three.

IV.     Conclusion and Recommendation

      For the foregoing reasons, the undersigned recommends that Respondent's motion

for summary judgment [Entry#19] be granted.

      IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 12, 2012                                          Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).